## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TIERA CAREY,**

        **Plaintiff,**                    **Case No.:**

**v.**

**COADVANTAGE CORPORATION**

        **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, TIERA CAREY, by and through her undersigned counsel and sues the Defendant, COADVANTAGE CORPORATION ("COADVANTAGE") and states as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367.

2.     Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. 1391(b).

## PARTIES

3.     Plaintiff, TIERA CAREY, is an adult resident of Hillsborough County, Florida.  At all times material, Plaintiff was an employee of Defendant within the meaning of the Family and Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and the Florida Civil Rights Act.

4.     Defendant, COADVANTAGE, is a Foreign Profit Corporation authorized and doing business in this Judicial District.  At all times material, Defendant employed Plaintiff.  At all times material, Defendant employed the requisite number of employees and, therefore, is an employer as defined by the Family and Medical Leave Act, the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

## GENERAL ALLEGATIONS

5.     At all times material, Defendant acted with malice and reckless disregard for Plaintiff's federal and state protected rights.

6.     At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

7.     Plaintiff has retained the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

8.     Plaintiff requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

9.      On October 4, 2021, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

10.     On April 11, 2022, the EEOC issued a Notice of Right to Sue related to Plaintiff's Charge of Discrimination.  This Complaint is filed within ninety (90) days of the issuance of the Notice of Right to Sue; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

11.     Plaintiff has satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statutes*, because more than one-hundred and eighty (180) days have passed since the filing of the Charge.

## FACTUAL ALLEGATIONS

12.      Plaintiff is a 35-year-old female with a disability; specifically, Asthma.

13.     Due to Plaintiff's Asthma (as well as a prior thyroid removal and low iron that weakened Plaintiff's ability to fight off illness), Plaintiff is more likely to get severely ill if she contracts COVID-19, according to the Centers for Disease Control and Prevention (CDC).

14.     In or around October 2019, Plaintiff began her employment with CoAdvantage Corporation ("CoAdvantage") as a COBRA Benefits Specialist.

15.     Plaintiff's supervisors were well-aware of her disability and her concerns surrounding COVID-19.

16.     In late February 2020, Plaintiff informed Demetrius Palmore (Manager, Benefit Operations) that she was pregnant (due date of October 16, 2020) and requested to work from home due to the COVID-19 pandemic.  Plaintiff explained to Palmore her concerns about having Asthma and being pregnant during the pandemic.

17.     Over a week passed but Plaintiff was ultimately permitted to work from home by Aurora Albritton (Director, Benefit Operations) after informing Albritton of her Asthma and COVID-related concerns.

18.     Plaintiff had a high-risk pregnancy, which her supervisors were also aware.

19.     In addition to Asthma, Plaintiff was diagnosed with high blood pressure during her pregnancy and had a prior blood transfusion, which placed Plaintiff at high-risk.

20.     In March 2020, Plaintiff was required to take Mondays off and utilize her accrued PTO, which Plaintiff planned to use as part of her FMLA/maternity leave in October 2020.  This was surprising to Plaintiff, considering that the

department was extremely busy and there was plenty of work to be done. Palmore told Plaintiff that he "chose" her and that it was mandatory for Plaintiff to use her PTO to cover the Mondays that she had off. Palmore also told Plaintiff that Defendant had to do it but provided no further explanation.

21.    Plaintiff made a verbal complaint to Manny Viera (Vice President, Human Resources).  Viera dismissed Plaintiff's concerns and told Plaintiff he would "see you next year" in the office.

22.    By comparison, two members of Plaintiff's team (David Pearson and Ashley Albritton) were not required to take days off.

23.    In early April 2020, Plaintiff was forwarded an email by Albritton from Palmore regarding Plaintiff's job performance.  This was the first time that anything was mentioned to Plaintiff about her performance. Plaintiff told Albritton that she felt she was being harassed because of her pregnancy.

24.    In early June 2020, Palmore issued Plaintiff a Performance Improvement Plan (PIP).  None of the issues outlined in the PIP were previously discussed with Plaintiff.  In fact, prior to the PIP, during weekly calls, Palmore told Plaintiff that she was doing a great job and never mentioned anything that Plaintiff needed to improve on.  Plaintiff refused to sign the PIP and told Palmore, Albritton, and Andrea Rath (Senior Human Resources Manager) that she might have to contact the EEOC because of the ongoing harassment and discrimination.

25.     Furthermore, Plaintiff contacted Rath and disputed the assertions in the PIP.  Rath told Plaintiff that the PIP would go away in 30 days.

26.     Palmore and Abritton then revised the PIP and removed one of the criticisms.  Again, Plaintiff told Rath and Viera that Palmore and Albritton were harassing her.

27.     On July 17, 2020, Palmore emailed Plaintiff and told her that she was doing a great job.  Shortly thereafter, in late July 2020, Palmore and Albritton informed Plaintiff that they were extending her PIP for an additional 30 days.

28.     In early August 2020, after having her PIP extended, Palmore told Plaintiff that she needed a doctor's note to return after missing a day of work due to illness.  Prior to informing Defendant of her pregnancy, Plaintiff was not required to submit a doctor's note and was specifically told by Palmore that Defendant did not require doctor's notes to return.

29.     Plaintiff emailed Rath and informed Rath of her concerns.  Rath dismissed Plaintiff's concerns and told Plaintiff that it was because Plaintiff was going to the hospital for contractions.

30.     Also, in early August 2020, Plaintiff's co-worker, David Pearson, was permitted to return to work while awaiting his results from a COVID-19 test. Plaintiff notified Rath of her concern about workplace safety and Pearson was sent home.

31.     On or about August 14, 2020, Albritton, Palmore, and Rath told Plaintiff that she needed to return to the office on August 18, 2020.  Specifically, Palmore and Albritton told Plaintiff that no one was allowed to work from home anymore.

32.     On August 17, 2020, Plaintiff sent a text message to Palmore and informed him that she had COVID-19 symptoms and had to quarantine per her doctor.  As a result, Plaintiff opted to use COVID-19 leave as of August 18, 2020.

33.     On October 16, 2020, Plaintiff's child was born and her FMLA leave began on October 23, 2020.

34.     On January 18, 2021, Plaintiff returned to work following FMLA leave for the birth of her child.  Upon her return, Plaintiff was told by Rath that everyone's temperature would be taken before reporting to work and everyone would be required to wear a mask.  However, these protocols were not followed, and the majority of employees were not wearing masks.

35.     Plaintiff raised her concerns to Michelle Minnis (Human Resources).  Minnis was irritated, told Plaintiff that masks were not mandatory, and some employees had COVID-19, but it was "normal."

36.     On January 20, 2021, Plaintiff spoke with Rath regarding the lack of COVID-19 safety protocols Defendant had in place, including a lack of a mask mandate and front desk employees failing to perform temperature checks upon

arrival. Additionally, Plaintiff informed Rath of her Asthma being the reason why she was particularly concerned about contracting COVID-19. During the conversation, Rath told Plaintiff that she did not have to remain at CoAdvantage and the job would continue without her. Rath also told Plaintiff that her PIP would continue. Plaintiff asked for Clint Burgess' (CEO) contact information and Rath told Plaintiff that Burges was very busy, and that Plaintiff had access to his contact information.

37.    After this meeting, Plaintiff contacted Viera and told him that she was continuing to be harassed and discriminated against. Viera told Plaintiff that he would look into her concerns and get back with her. He never did.

38.    On February 2, 2021, Palmore approved Plaintiff's PTO request for February 25 and February 26, 2021.

39.    On February 3, 2021, Plaintiff asked Palmore if they could conduct their one-on-one meeting via phone.

40.    Approximately 35 minutes later, Palmore informed Plaintiff that one of the two days that Plaintiff requested PTO was no longer approved because one of Plaintiff's co-workers was going to be out of the office on that day. Plaintiff told Palmore that she made plans and he told her that, "[b]ased on business needs, the approval has been changed." Then, Palmore told Plaintiff that they would meet in person and wear masks. Plaintiff told Palmore that she did not feel comfortable

due to the new COVID-19 variant and would not meet in person; particularly since they had a meeting by phone the previous day. Palmore reiterated that they would meet in person and would socially distance and wear masks.

41.    Plaintiff forwarded her communications with Palmore to Rath and Viera and sought advice on how the matter could be resolved. Rath responded and simply told Plaintiff that her concerns "[would] be addressed" in Plaintiff's one-on-one with Palmore that day.

42.    Plaintiff responded and asked for Human Resources' view on the matter. Plaintiff also raised the in-person meeting issue with Palmore and that she felt that she was being harassed.

43.    Later that day, Plaintiff emailed Palmore and told him that she was waiting for HR's response on the matter and stated that they might need to reschedule the meeting. Again, Plaintiff offered to participate in the meeting by phone.

44.    Shortly thereafter, Plaintiff received an email from Rath who told Plaintiff that if she did not attend the meeting in-person, then Plaintiff would be suspended for three days without pay.

45.    Plaintiff was suspended, and Palmore and Carlene Cole (Human Resources) embarrassed Plaintiff in front of her co-workers, took Plaintiff's badge and walked Plaintiff out of the building.

46.    On February 3, 2021, Plaintiff emailed Clint Burgess and reported that she was on a 3-day suspension without pay because she did not want to meet in person with her manager due to concerns about COVID-19 (there was a company coronavirus update that stated they should have virtual meetings).  Plaintiff also copied a July 9, 2020 email that she sent to Burgess and stated that she felt harassed and discriminated against.

47.    On February 8, 2020, Plaintiff emailed Rath and told her that she was not comfortable meeting with Palmore in the conference room but would happily meet by phone.  Furthermore, Plaintiff noted that she felt that she was being retaliated against for speaking out against employees not wearing masks and noted that there are OSHA regulations that provide her with the right to have a safe working environment.  Plaintiff requested that Defendant keep her safe in the workplace.

48.    On February 8, 2021, Viera called and said that he and Palmore would meet with Plaintiff (outside due to COVID-19) and go over her harassment complaints, write-up, and the 3-day suspension.

49.    On February 9, 2021, Plaintiff arrived to meet with Viera and Palmore. Viera told Plaintiff that they would meet in the conference room.  Plaintiff told him that they agreed to meet outside and Viera responded sarcastically that "maybe" he would "need to find a paper towel to wipe the table down."  During the

meeting, Palmore only stated that Plaintiff was doing an "awesome job."  They dismissed Plaintiff's harassment, discrimination, and retaliation concerns. Instead, Viera handed Plaintiff a write-up for not meeting with Palmore in his office.  Viera told Plaintiff that they would no longer discuss anything else with her.

50.     Later that day, Plaintiff emailed Viera and told him that she again felt retaliated against because of her workplace safety concerns related to COVID-19.

51.     During an interaction earlier that day with Viera, she asked to speak with CEO Burgess.  Viera, in an intimidating manner, told Plaintiff that she needed to "drop it" and was not going to speak with the CEO.

52.     On or about February 16, 2021, Palmore requested a one-on-one meeting with Plaintiff by phone regarding the extended Performance Improvement Plan.  Palmore told Plaintiff that she was no longer on the extended PIP and that she was going to get back her PTO day that he previously denied.

53.     On February 10, 2021, Rath emailed Plaintiff regarding a potential accommodation under the Americans with Disabilities Act (ADA).  Specifically, Rath stated that it came to her attention that Plaintiff wrote to Viera and "and outlined some health and/or emotional issues you are experiencing that are/might be affecting you at work and/or impacting your ability to perform at the essential functions of your job."  Rath provided the company's ADA

accommodation request paperwork for Plaintiff to have completed by her physician.    Plaintiff asked Rath if working from home would be an accommodation that Defendant would consider, and Rath responded that "remote work is not an option."    However, Plaintiff's co-worker, David Pearson, was permitted to work remotely.

54.    On February 22, 2021, Plaintiff emailed Rath and inquired about the company's protocol when a co-worker was in the office and potentially had COVID-19.  Plaintiff added that Defendant's Tampa office was not monitoring employee temperatures because there was no front desk attendant.  Furthermore, Plaintiff stressed that she should not have to be worried about people infecting her with the potentially deadly virus because the company was failing to keep her safe.  Plaintiff's co-worker was sent home and permitted to work from home. Plaintiff also left as she was not feeling well.

55.    On March 1, 2021, Plaintiff returned to work and her computer was locked.  Viera told Plaintiff that she was fired from her job because she did not notify management that she was leaving on February 22, 2021.  Plaintiff showed Viera the text message that she sent to Palmore where she informed him that she was leaving that day.  Viera told Plaintiff that she could not return without a doctor's note because company policy required a doctor's note if an employee was

absent for three (3) or more days.  Plaintiff was only out for 2½ days (February 25 and 26 were approved days off), but Viera said that was the same as three.

56.    Plaintiff was not able to immediately get a doctor's note, so Viera advised Plaintiff to get a COVID-19 test and then she could return with a negative result.

57.    On March 8, 2021, Plaintiff provided Rath with a doctor's note and asked when she could return to work.  Rath rejected Plaintiff's doctor's note because it did not include a return-to-work date.  Therefore, Plaintiff sent a new doctor's note stating that she was seen on March 7, 2021, and could return to work on March 9, 2021, without restrictions.

58.    During March 2021, Palmore made offensive comments and poked fun at Plaintiff for her concerns about workplace safety.  For example, Palmore sarcastically stated: "I know you don't want to touch the paper, so I'll just sit it on the desk beside you." He also sarcastically stated that he would stand more than the recommended 6-feet away from Plaintiff because he knew that Plaintiff did not want to catch anything.

59.    On April 16, 2021, Plaintiff was issued a Corrective Action Form for not stopping at the front desk for a daily temperature check.  Plaintiff emailed Palmore, provided background as to why she did not get her temperate checked

and stated that wearing a mask helps prevent the spread of COVID-19.  Palmore responded: "We appreciate your opinion . . ."

60.     On April 20, 2021, Plaintiff attended a team meeting with Albritton, Palmore, and her co-worker, Ashley Vick.  Everyone was either at their desks or in their offices and the meeting was conducted by phone.  During the meeting, Albritton was rude and dismissive of Plaintiff and would not answer work-related questions that Plaintiff had.

61.     On April 21, 2021, Plaintiff emailed Rath and Viera, made a complaint of discrimination, and provided an example of how Albritton was treating her less favorably than her co-workers. No one responded to Plaintiff's email or discussed it with her.

62.     Later that day, Plaintiff was terminated from her employment with Defendant.  Palmore, along with Viera called and told Plaintiff that she was terminated for allegedly saying "fuck this job" the previous day.  Plaintiff never said that and one of Plaintiff's co-workers, Gloria Lovett, confirmed in a statement that Plaintiff did not say it.  Palmore claimed that the email Plaintiff sent to Rath and Viera earlier that day "proved" that Plaintiff cursed.  Plaintiff's email did not say anything like that.

63.     Plaintiff asked how Palmore was able to see the email complaint that she sent to Human Resources.  Viera said: "don't worry about that."  Then,

Palmore came out of his office with Carlene Cole and requested Plaintiff's badge in front of her co-workers.

## COUNT I
## FAMILY AND MEDICAL LEAVE ACT – RETALIATION

64.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

65.    Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq.*

66.    Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding his eligible FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

67.    Defendant is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

68.    Plaintiff utilized and was approved for FMLA leave for the birth of her child.

69.    Defendant retaliated against Plaintiff in violation of the FMLA in that Plaintiff's utilization of FMLA leave was a substantial or motivating factor that

prompted Defendant to take a variety of adverse employment actions against Plaintiff as detailed above.

70.     Defendant's actions constitute violations of the FMLA.

71.     As a result of Defendant's actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.     Back pay and benefits;

    b.     Prejudgment interest on back pay and benefits;

    c.     Front pay and benefits;

    d.     Liquidated damages;

    e.     Attorneys' fees and costs;

    f.     Injunctive relief; and

    g.     For any other relief this Court deems just and equitable.

## COUNT II
## AMERICANS WITH DISABILITIES ACT – DISCRIMINATION

72.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

73.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq*.

74.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

75.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended.  Specifically, Plaintiff's Asthma (and related conditions) substantially limited one or more major life activities and/or one or more major bodily functions.

76.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

77.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant terminated Plaintiff's employment.

78.     The above-described acts of disability discrimination constitute a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

79.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

80.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

81.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.     Back pay and benefits;

b.     Prejudgment interest on back pay and benefits;

c.     Front pay and benefits;

d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.     Attorneys' fees and costs;

f.     Injunctive relief; and

h.     For any other relief this Court deems just and equitable.

## COUNT III
## FLORIDA CIVIL RIGHTS ACT ("FCRA")
## DISABILITY/HANDICAP DISCRIMINATION

82.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

83.     Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.*

84.     Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

85.     Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's Asthma (and related conditions) substantially limited one or more major life activities and/or one or more major bodily functions.

86.     Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

87.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her known disability, and/or because Defendant regarded her as having a disability, and/or because of Plaintiff's record of having a disability in violation of the Florida Civil Rights Act.  Specifically, Defendant terminated Plaintiff's employment.

88.     The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

89.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

90.     Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

91.     As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

   a.     Back pay and benefits;

   b.     Prejudgment interest on back pay and benefits;

   c.     Front pay and benefits;

   d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

   e.     Attorneys' fees and costs;

   f.     Injunctive relief; and

   h.     For any other relief this Court deems just and equitable.

**COUNT IV**
**AMERICANS WITH DISABILITIES ACT –**
**FAILURE TO ACCOMMODATE**

92.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

93.     Plaintiff is an individual entitled to protection under the Americans with Disabilities Act, as amended, 42 U.S.C. §12112 *et seq.*

94.     Plaintiff is an employee within the meaning of the Americans with Disabilities Act, as amended.

95.     Plaintiff is an individual with a disability within the meaning of the Americans with Disabilities Act, as amended. Specifically, Plaintiff's Asthma (and related conditions) substantially limited one or more major life activities and/or one or more major bodily functions.

96.     Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, as amended, because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

97.     By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability in violation of the Americans with Disabilities Act, as amended. Specifically, Defendant failed to provide Plaintiff with a reasonable accommodation for her disabilities.

98.     The above-described act of disability discrimination constitutes a violation of the Americans with Disabilities Act, as amended, for which Defendant is liable.

99.     Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

100.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

102.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.    Back pay and benefits;

    b.    Prejudgment interest on back pay and benefits;

    c.    Front pay and benefits;

    d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.    Attorneys' fees and costs;

    f.    Injunctive relief; and

    h.    For any other relief this Court deems just and equitable.

**COUNT V**
**FLORIDA CIVIL RIGHTS ACT ("FCRA")**
**DISABILITY/HANDICAP DISCRIMINATION –**
**FAILURE TO ACCOMMODATE**

103.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

104.    Plaintiff is an individual entitled to protection under the Florida Civil Rights Act, *Fla. Stat.* §760, *et seq.*

105.    Plaintiff is an employee within the meaning of the Florida Civil Rights Act.

106.    Plaintiff is an individual with a disability/handicap within the meaning of the Florida Civil Rights Act.  Specifically, Plaintiff's Asthma (and related conditions) substantially limited one or more major life activities and/or one or more major bodily functions.

107.    Plaintiff was a qualified individual with a disability within the meaning of the Florida Civil Rights Act because Plaintiff, with or without a reasonable accommodation, could perform the essential functions of her job.

108.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her disability in violation of the Florida Civil Rights Act.  Defendant failed to provide Plaintiff with a reasonable accommodation for her disabilities.

109.    The above-described acts of disability discrimination constitute a violation of the FCRA, for which Defendant is liable.

110.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

111.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

112.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.      Back pay and benefits;

      b.      Prejudgment interest on back pay and benefits;

      c.      Front pay and benefits;

      d.      Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.      Attorneys' fees and costs;

      f.      Injunctive relief; and

      h.      For any other relief this Court deems just and equitable.

## COUNT VI
## AMERICANS WITH DISABILITIES ACT – RETALIATION

113.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

114.    Plaintiff engaged in protected activity under the Americans with Disabilities Act, as amended.   Specifically, Plaintiff requested reasonable accommodations for her disabilities.

115.    Plaintiff suffered adverse employment actions (as detailed above) for engaging in protected activity under the Americans with Disabilities Act, as amended.

116.    Defendant's adverse employment actions were causally connected to Plaintiff's engagement in protected activity.

117.    The above-described act of retaliation constitutes a violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112 *et seq.*

118.    Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

119.    Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

120.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.    Back pay and benefits;

b.    Prejudgment interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.    Attorneys' fees and costs;

f.    Injunctive relief; and

g.    For any other relief this Court deems just and equitable.

**COUNT VII**
**TITLE VII – RETALIATION**

121.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

122.   Plaintiff engaged in protected activity by opposing an employment practice made unlawful by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* ("Title VII").   Specifically, Plaintiff opposed harassment, discrimination and retaliation by making good-faith complaints to Defendant.

123.   In retaliation for engaging in protected activity, Plaintiff suffered adverse employment actions as detailed above.

124.   Stated differently, the adverse employment action suffered by Plaintiff at the hands of Defendant is causally connected to her opposition and resistance of harassment, discrimination, and retaliation.

125.   The aforementioned actions by Defendant constitute retaliation by Defendant in violation of Title VII of the Civil Rights Act of 1964.

126.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally-protected rights of Plaintiff.

127.   As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.      Back pay and benefits;

b.  Prejudgment interest on back pay and benefits;

c.  Front pay and benefits;

d.  Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

e.  Punitive damages;

f.  Attorneys' fees and costs;

g.  Injunctive relief; and

h.  For any other relief this Court deems just and equitable.

## COUNT VII
## FLORIDA CIVIL RIGHTS ACT (FCRA) - RETALIATION

128.  Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

129.  Plaintiff engaged in protected activity under the Florida Civil Rights Act (FCRA).  Specifically, Plaintiff requested reasonable accommodations for her disabilities and opposed harassment, discrimination, and retaliation.

130.  Plaintiff suffered adverse employment actions (as described above) for engaging in protected activity under the FCRA.

131.  Defendant's adverse employment action was causally connected to Plaintiff's engagement in protected activity.

132.  The above-described act of retaliation constitutes a violation of the Florida Civil Rights Act, *Fla. Stat.* § 760, *et seq.*

133.    Defendant's unlawful and retaliatory employment practices toward Plaintiff were intentional.

134.    Defendant's unlawful and retaliatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

135.    As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

      a.     Back pay and benefits;

      b.     Prejudgment interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

      e.     Attorneys' fees and costs;

      f.     Injunctive relief; and

      g.     For any other relief this Court deems just and equitable.

## COUNT VIII
## PREGNANCY DISCRIMINATION ACT

136.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

137.    Plaintiff is a member of a protected class under Pregnancy Discrimination Act, 42 U.S.C. § 2000, *et seq*.

138.   By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her pregnancy and/or her medical condition related to pregnancy by terminating Plaintiff's employment.

139.   Defendant's adverse employment decision toward Plaintiff was motivated by pregnancy-based considerations.

140.   Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

141.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federal-protected rights of Plaintiff.

142.   As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

     a.     Back pay and benefits;

     b.     Prejudgment interest on back pay and benefits;

     c.     Front pay and benefits;

     d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

     e.     Punitive damages;

     f.     Attorneys' fees and costs;

g.      Injunctive relief; and

h.      For any other relief this Court deems just and equitable.

**COUNT IX**
**FLORIDA CIVIL RIGHTS ACT – SEX/PREGNANCY DISCRIMINATION**

143.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through sixty-three (63).

144.    Plaintiff is a member of a protected class under the Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

145.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her sex/pregnancy and/or medical conditions related to pregnancy by terminating Plaintiff's employment.

146.    Defendant's adverse employment decisions toward Plaintiff were motivated by sex/pregnancy-based considerations.

147.    Defendant's unlawful and discriminatory employment practices toward Plaintiff were intentional.

148.    Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiff.

149.    As a result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

    a.     Back pay and benefits;

    b.     Prejudgment interest on back pay and benefits;

    c.     Front pay and benefits;

    d.     Compensatory damages for emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

    e.     Punitive damages;

    f.     Attorneys' fees and costs;

    g.     Injunctive relief; and

    h.     For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

150.    Plaintiff, TIERA CAREY, demands a trial by jury on all issues so triable.

**DATED** this 8th day of July 2022.

                 **FLORIN GRAY BOUZAS OWENS, LLC**

                 *Gregory A. Owens*_____
                 **GREGORY A. OWENS, ESQUIRE**
                 Florida Bar No.: 51366
                 greg@fgbolaw.com
                 **WOLFGANG M. FLORIN, ESQUIRE**
                 Florida Bar No.: 907804
                 wolfgang@fgbolaw.com
                 16524 Pointe Village Drive, Suite 100
                 Lutz, Florida 33558

(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*